**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

DALE MCNEAL, )
              Plaintiff, )
   v. )   Case No.12-1284-RDR
FRONTIER AG, INC. et al )
              Defendants. )

**MEMORANDUM AND ORDER**

Plaintiff has brought an ERISA claim against defendant Union Security Insurance Company ("USI") alleging the wrongful denial of disability benefits under a policy issued by USI. Plaintiff has also brought a state law breach of contract claim against defendant Frontier Ag, Inc. ("Frontier"), alleging that Frontier promised at the time of plaintiff's employment but did not provide disability benefits coverage beginning 90 days after the start of employment. This case is before the court upon motions for summary judgment by these defendants. Another defendant, Assurant, Inc., has joined in defendant USI's motion for summary judgment. All parties agree that Assurant, Inc. may be dismissed from this case. USI's motion for summary judgment is combined with a motion in limine asking that the court's review of the issues as to USI be confined to an administrative record.

I. Defendant USI's motion for summary judgment shall be granted because USI did not wrongfully deny plaintiff's claim for disability benefits.

   A. Factual background

   Frontier is an agribusiness cooperative. USI issued a group insurance policy to Frontier which qualifies as an employee welfare benefit plan as defined by ERISA. The policy provides long-term disability benefits to Frontier employees. Eligibility for participation in the policy begins after 180 days of service with the company. Administrative Record ("AR") at pp. 17, 19. This policy was in effect in September 2009 when plaintiff commenced his employment with Frontier. Plaintiff contends that his employment commenced on September 14, 2009. USI contends that plaintiff's employment commenced on September 28, 2009 and that September 14, 2009 was when plaintiff was hired. But, this dispute does not appear material to the issues in this case. Plaintiff's last day worked was September 24, 2010 and his last payroll check was for the period ending September 28, 2010. Plaintiff stopped working for Frontier because of physical disability.

   Under the group insurance policy, USI has the discretionary authority to pay and deny claims, determine eligibility for benefits, and interpret policy terms. Plaintiff made a claim under the policy which was denied on the grounds that

plaintiff's alleged disability resulted from a pre-existing condition. Under the terms of the policy:

> A "pre-existing condition" means an <u>injury</u>, sickness, pregnancy, symptom or physical finding, or any related <u>injury</u>, sickness pregnancy, symptom or physical finding, for which you:
>
> •consulted with or received advice from a licensed medical or dental practitioner, or
> •received medical or dental care, treatment, or services, including taking drugs, medicine, insulin, or similar substances
>
> during the 3 months that end on the day before you became insured under the <u>long term disability insurance policy</u>.

AR at 29. The policy further provides that benefits will not be paid "for any <u>disability</u> resulting, directly or indirectly, from a pre-existing condition . . . ." <u>Id.</u>

USI contends that plaintiff became insured under the insurance policy on March 27, 2010. The policy provided that eligibility for participation could not begin until 180 days after the commencement of employment, which, to reiterate, occurred either on September 14, 2009 or on September 28, 2009.

According to USI, plaintiff had a "pre-existing condition" of bilateral leg and back pain for which plaintiff consulted with a licensed medical practitioner or received medical care, treatment or services during the 3-month period that ended on the March 27, 2010. Plaintiff does not deny that he and his doctors have reported that plaintiff suffered severe leg and

back pain starting in January 2010 and continuing through October 4, 2010. These symptoms were diagnosed initially as caused by peripheral artery disease. However, treatment for peripheral artery disease did not improve plaintiff's condition in general. Later, in August 2010, a diagnosis of spinal or lumbar stenosis was made.[1] Apparently this was the primary cause of plaintiff's leg and back pain. Plaintiff did not receive treatment for spinal stenosis until after the diagnosis was made.

Plaintiff's claim for benefits was denied by USI initially and finally on the grounds that plaintiff's disabling condition was a "pre-existing condition" under the terms of the policy.

B. <u>Summary judgment standards should not be applied to plaintiff's claims against USI</u>.

Plaintiff contends that USI's summary judgment motion should be denied because it may invite more than one review of the administrative record. We recognize, as have other judges in this district, that summary judgment standards under FED.R.CIV.P. 56 are not completely suited to the court's review of the administrative record in an ERISA action. USI's motion is not asking the court to determine whether there is a material issue of fact for trial, as much as to decide upon review of an administrative record whether plaintiff's claim for disability

---

[1] There was a diagnosis of possible arterial stenosis on April 28, 2010. There is no claim that this diagnosis was correct.

4

benefits was reasonably denied.  The court's job in this instance is to act "as an appellate court and evaluate[] the reasonableness of a plan administrator or fiduciary's decision based on the evidence contained in the administrative record." Panther v. Synthes (U.S.A.), 380 F.Supp.2d 1198, 1207 n. 9 (D.Kan. 2005)(citing Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1579 & n.31 (10th Cir. 1994)); see also, Hickman v. LSI Corp., 2012 WL 2505298 *1 (D.Kan. 6/28/2012)(when reviewing a denial of disability benefits upon cross-motions for summary judgment, "the court acts as an appellate court").

Although there is something in general to plaintiff's challenge to the propriety of summary judgment in this context, we reject it as grounds to deny judgment in this case.  As USI notes, many similar cases have been decided upon summary judgment motions, even if summary judgment standards have not been applied.  Upon review, we do not think that considering USI's summary judgment motion will be adverse to judicial economy or fairness in this situation.

C.  The court shall apply an arbitrary and capricious standard of review to the administrative record.

Since the insurance plan in this case gives the administrator discretionary authority to determine eligibility for benefits, we apply an arbitrary and capricious standard and try to determine whether the interpretation of the plan was

reasonable and in good faith. Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d 1124, 1130 (10th Cir. 2011). Nevertheless, because USI determines eligibility for benefits and pays benefits under the policy, the court will consider that conflict as a factor in determining whether USI abused its discretion in denying benefits in this case. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). Its weight as a factor depends on the seriousness of the conflict. Foster v. PPG Industries, Inc., 693 F.3d 1226, 1232 (10th Cir. 2012). It is given great weight where circumstances suggest a likelihood that it affected the benefits decision; it is less important or even unimportant where steps were taken to reduce potential bias and promote accuracy. Id.

Normally, "[o]ur review is 'limited to the administrative record – the materials compiled by the administrator in the course of making his decision.'" Holcomb v. UNUM Life Ins. Co. of America, 578 F.3d 1187, 1192 (10th Cir. 2009)(quoting Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1003 (10th Cir. 2004)). "The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety." Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1163 (10th Cir. 2010). "[I]t is the unusual case in which the district court should allow supplementation of the record." Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197, 1203

(10th Cir. 2002). Examples of such "exceptional circumstances," include where evidence outside the administrative record may be admitted regarding issues such as conflict of interest or when there is evidence that a claimant could not have presented in the administrative process. Id. In this instance, plaintiff has not shown that exceptional circumstances exist to supplement the record. The evidence plaintiff seeks the court to consider is not related to the alleged conflict of interest, nor has plaintiff shown that he could not have presented the material during the administrative process.[2] Regardless, the court has examined the material and determined that it would not have changed the outcome of our review had we considered it with the administrative record.

Lack of substantial evidence, mistake of law and bad faith are considered indications of arbitrary and capricious decisions. Finley v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1176 (10th Cir. 2004). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002)(interior quotation omitted). The decision to deny benefits in this case must be upheld unless

---

[2] Plaintiff contends that the administrative process did not lend an ample opportunity to participate in depositions, but plaintiff does not show that the information he seeks to present from a deposition could not have been presented in some other form during the administrative process.

it is not grounded on any reasonable basis. Finley, 379 F.3d at 1179 (quoting Kimber v. Thiokol, 196 F.3d 1092, 1098 (10th Cir. 1999)).

Plaintiff bears the burden of proving eligibility for benefits. Hancock v. Metropolitan Life Ins. Co., 590 F.3d 1141, 1155-66 (10th Cir. 2009). USI does not bear the burden of proving "facts supporting an exclusion of coverage." Holcomb, 578 F.3d at 1193 n.5. Plaintiff has the burden of showing an abuse of discretion. McClenahan v. Metropolitan Life Ins. Co., 416 Fed.Appx. 693, 697 (10th Cir. 3/21/2011).

D.  The denial of plaintiff's claim by USI was not arbitrary or capricious.

The court has reviewed the administrative record and finds that the decision to deny plaintiff's claim was not arbitrary or capricious. The insurance policy provided that benefits would not be paid for a "disability resulting, directly or indirectly, from a pre-existing condition." The term "pre-existing condition" is defined to include injuries, symptoms or physical findings for which medical care, treatment or advice is received during the three-month period that ended on the day before the insured became eligible for coverage under the long-term disability insurance policy. The administrative record shows that plaintiff reported symptoms of bilateral leg and back pain (among other non-disabling conditions) in January, February and

8

early March 2010. This falls in the three-month period ending before plaintiff became insured, regardless of whether plaintiff was employed on September 14 or 28, 2009. The same symptoms continued month by month through the end of plaintiff's employment. This leg and back pain was initially considered a symptom of peripheral vascular disease. By August or September 2010, a diagnosis of spinal stenosis was considered. This diagnosis was more or less confirmed in early October 2010. It is the condition which plaintiff claims has disabled him from work.

Plaintiff argues that the diagnosis of spinal stenosis did not arise until after he was eligible for long-term disability benefits. This is true. But, we agree with USI that plaintiff's argument conflates "diagnosis" with "symptoms." Under the terms of the policy a "pre-existing condition" is defined to include "symptoms" or "physical findings" which cause disability. The "symptoms" in this case were the bilateral leg and back pain which were regularly documented in medical records from January 2010 through September 2010. E.g., AR at 514 (medical record dated October 4, 2010 referencing 10-month history of lower back and bilateral leg pain with numbness); AR at 399 (examination notes of Dr. Younger dated 1/11/2010 referencing backache, back pain (when walking) and calf pain (when walking)); AR at 426 (statement of Dr. Poticha dated

3/4/2010 referencing plaintiff's difficulty walking because of calf cramps and foot cramps). Claim documents filed in this matter also referred to plaintiff's disabling condition stemming back to January 2010. AR at 516, 518.

It may be argued that the symptoms in January and March 2010 were consistent with vascular disease not spinal disease, as noted in Dr. Poticha's letter dated May 16, 2011 (AR at 263), and that plaintiff suffered a sudden onset of back pain in July 2010, which was the first symptom of spinal stenosis. AR at 375. These arguments were not accepted by the separate reviews of medical records conducted by Dr. Craig Heligman and Dr. Gregory Frey. Dr. Heligman concluded that the tests done for vascular disease (which did not indicate a significant case) and the treatments given for vascular disease (which did not reduce plaintiff's symptoms) meant that the symptoms of leg pain originally identified as the result of vascular disease were related to low back and lumbar spine disease. AR at 117-118. Dr. Frey concluded that plaintiff's bilateral lower leg cramps (claudication) were "primarily neurogenic claudication from lumbar spinal stenosis and distantly secondarily from vascular claudication," and that these symptoms were treated during the three-month period prior to plaintiff's eligibility under the insurance policy. AR at 149.

Dr. Charles Gordon wrote a short letter stating his belief that plaintiff's "lumbar spinal stenosis was not symptomatic until late summer 2010" and that plaintiff's "real problem" is spinal stenosis, not vascular problems. AR at 301. This letter does not substantially detract from the weight of the evidence supporting the denial of coverage. Dr. Gordon's letter does not indicate a review of plaintiff's medical history in the early months of 2010 or explain why the symptoms in late summer 2010 were substantially different from the symptoms reviewed by several doctors during the previous months of the year.

In summary, the court finds that substantial evidence supports the decision to deny benefits. Plaintiff has not demonstrated circumstances showing that by reason of a conflict of interest or any other cause, the court should find that the decision to reject plaintiff's claim was arbitrary or capricious. Therefore, judgment shall be entered in favor of USI upon its motion. In addition, defendant Assurant, Inc. shall be dismissed with prejudice.

II. <u>The court shall decline to exercise supplemental jurisdiction over plaintiff's breach of contract claim against Frontier</u>.

This case was removed to this court from the state district court of Stevens County, Kansas. According to the notice of removal, plaintiff is an individual residing in the State of Kansas and defendant Frontier is a corporation duly organized

and existing under the laws of the State of Kansas with its principal place of business in Oakley, Kansas. Doc. No. 1. Plaintiff's remaining claim in this case is a state-law breach of contract claim against Frontier. The court has supplemental jurisdiction over this claim. Under 28 U.S.C. § 1367(c)(3), the court <u>may</u> decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it has original jurisdiction. In <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 357 (1988), the court held that a district court, in deciding whether to remand, should weigh considerations of economy, convenience, fairness, and comity. The Tenth Circuit has stated that a district court "usually should" decline to exercise jurisdiction over remaining state claims when all federal claims have been dismissed. <u>Smith v. City of Enid ex rel. Enid City Comm'n</u>, 149 F.3d 1151, 1156 (10th Cir. 1998).

In this case, the court has no reason to believe that economy or fairness will be impinged by remanding the state law claim. The same paperwork related to the summary judgment motion may be considered by the state court. Although this case is at a later stage in that a final pretrial order has been completed, this factor by itself is not decisive. See <u>Koch v. City of Del City</u>, 660 F.3d 1228, 1248-49 (10th Cir. 2011) <u>cert. denied</u>, 133 S.Ct. 211 (2012)(affirming remand of state law claims at the later stages of a case). The state court may be a

more convenient forum for plaintiff and not appreciably less convenient for Frontier. Finally, the principles of comity support having the state court decide a state law breach of contract claim. While Frontier has raised a defense of ERISA preemption which is a question of federal law, state courts have concurrent jurisdiction over many ERISA claims and have the authority to decide preemption questions.

In summary, after due consideration, the court shall decline to exercise supplemental jurisdiction over plaintiff's breach of contract claim against Frontier.

III. Conclusion.

The court shall grant the motion for summary judgment (Doc. No. 36) filed on behalf of defendant USI and defendant Assurant, Inc. The court shall direct that judgment be entered in favor of USI and that Assurant, Inc. be dismissed with prejudice. The court shall not rule upon defendant Frontier's motion for summary judgment (Doc. No. 35). The court shall further direct that plaintiff's claims against Frontier be remanded to the state district court for Stevens County, Kansas.

**IT IS SO ORDERED.**

Dated this 10th day of February, 2014, at Topeka, Kansas.

s/ Richard D. Rogers
Richard D. Rogers
United States District Judge